Damiani v WSNCH N., Inc. (2025 NY Slip Op 07278)

Damiani v WSNCH N., Inc.

2025 NY Slip Op 07278

Decided on December 24, 2025

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on December 24, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

ANGELA G. IANNACCI, J.P.
HELEN VOUTSINAS
JANICE A. TAYLOR
LAURENCE L. LOVE, JJ.

2024-00840
 (Index No. 712896/22)

[*1]Christina Damiani, etc., respondent, 
v
WSNCH North, Inc., etc., et al., appellants, et al., defendant.

Barker Patterson Nichols, LLP, Garden City, NY (Megan A. Lawless of counsel), for appellants.
The Rizzuto Law Firm, Uniondale, NY (Kristen N. Reed of counsel), for respondent.

DECISION & ORDER
In an action, inter alia, to recover damages for medical malpractice, the defendants WSNCH North, Inc., and Catholic Health System of Long Island, Inc., appeal from an order of the Supreme Court, Queens County (Tracy Catapano-Fox, J.), entered October 19, 2023. The order denied, without prejudice to renewal, those defendants' motion pursuant to CPLR 3211(a)(7) to dismiss the complaint insofar as asserted against them.
ORDERED that the order is affirmed, with costs.
In February 2021, Robert Damiani (hereinafter the decedent) was brought to the emergency department of St. Joseph Hospital (hereinafter the hospital) with complaints of dehydration and tachycardia after having tested positive for COVID-19. The decedent was admitted to the hospital's critical care unit. At the time of admission, an examination of the decedent's skin was normal. The decedent was treated with medications and supplemental oxygen and eventually intubated. Three days after his intubation, a nurse noted a sacral pressure ulcer, which was measured and treated with topical medication. The note stated that the decedent was to be turned and repositioned every two hours, and a later note indicated that the "Hyperbaric Wound Care Center" should be notified and a wound care evaluation performed. Two days after the first note, the decedent had a surgical consult regarding the pressure ulcer and topical treatment was continued. Two days later, the decedent was transferred to a different hospital.
Following the decedent's death in May 2021, the plaintiff commenced this action, inter alia, to recover damages for medical malpractice against the defendants WSNCH North, Inc., doing business as the hospital, and Catholic Health System of Long Island, Inc. (hereinafter together the defendants), and another defendant. The plaintiff alleged in a bill of particulars that the defendants had failed to prevent, diagnose, and treat the decedent's pressure ulcer, including by failing to properly stage the ulcer, adjust orders for more frequent turning and positioning when the current regimen failed, and provide an air mattress and other assistive devices.
After joinder of issue but prior to the completion of discovery, the defendants moved pursuant to CPLR 3211(a)(7) to dismiss the complaint insofar as asserted against them, contending that they were immune from liability under the Emergency or Disaster Treatment Protection Act [*2](EDTPA) (Public Health Law former art 30-D, §§ 3080-3082, repealed by L 2021, ch 96, § 1) and the United States Public Readiness and Emergency Preparedness Act (PREP Act) (42 USC § 247d-6d et seq.). In support of the motion, the defendants submitted the decedent's medical records and an affirmation from the hospital's chief medical officer. The plaintiff opposed the motion, arguing, among other things, that the EDTPA, as amended effective August 3, 2020, did not provide for immunity for the defendants' failures to properly care for the decedent's pressure ulcer. In an order entered October 19, 2023, the Supreme Court denied the motion without prejudice to renewal upon the completion of discovery. The defendants appeal.
"Where a court considers evidentiary material in determining a motion to dismiss a complaint pursuant to CPLR 3211(a)(7), but does not convert the motion into one for summary judgment, the criterion becomes whether the plaintiff has a cause of action, not whether the plaintiff has stated one, and unless the movant shows that a material fact as claimed by the plaintiff is not a fact at all and no significant dispute exists regarding the alleged fact, the complaint shall not be dismissed" (Kluska v Montefiore St. Luke's Cornwall, 227 AD3d 690, 691 [internal quotation marks omitted]). Evidentiary "[s]ubmissions by the defendant on a motion pursuant to CPLR 3211(a)(7) 'will seldom if ever warrant [dismissal] . . . unless [they] establish conclusively that plaintiff has no cause of action'" (Hyman v Richmond Univ. Med. Ctr., 239 AD3d 617, 618, quoting Rovello v Orofino Realty Co., 40 NY2d 633, 636). Thus, to obtain dismissal, the defendants were required to "conclusively" establish, as a matter of law, that they were entitled to immunity under the EDTPA or the PREP Act (id. [internal quotation marks omitted]).
At the time of the defendants' treatment of the decedent, the EDTPA, in relevant part, provided health care facilities with immunity from civil liability for any harm or damages alleged to have been sustained as a result of an act or omission in the course of providing "health care services," if (1) the health care facility was providing "health care services" in accordance with applicable law or where appropriate pursuant to a COVID-19 emergency rule, (2) the act or omission occurred in the course of providing "health care services" and the treatment of the individual was impacted by the health care facility's decisions or activities in response to or as a result of the COVID-19 outbreak and in support of the State's directives, and (3) the health care facility was providing "health care services" in good faith (Public Health Law former § 3082[1]; see Hyman v Richmond Univ. Med. Ctr., 239 AD3d at 618).
When the EDTPA was initially enacted, the statute defined "health care services" to include, inter alia, services provided by a health care facility "that relate to" the "diagnosis, prevention, or treatment of COVID-19" or "the assessment or care of an individual with a confirmed or suspected case of COVID-19" (Public Health Law former § 3081[5][a], [b] [eff Mar. 7, 2020, to Aug. 2, 2020]). Effective August 3, 2020, the Legislature, seeking "to further narrow the scope of [the EDTPA] liability protections to apply only when a health care facility or medical professional is providing direct care related to the diagnosis or treatment of COVID-19 and the care is impacted by COVID-19" (Senate Introducer's Mem in Support, Bill Jacket, L 2020, ch 134 at 5), amended the definition of "health care services." Thus, at the time of the defendants' care of the decedent, "health care services" was defined to include services provided by a health care facility "that relate to" the "diagnosis or treatment of COVID-19" or "the assessment or care of an individual as it relates to COVID-19, when such individual has a confirmed or suspected case of COVID-19" (Public Health Law former § 3081[5][a], [b] [emphasis added] [eff Aug. 3, 2020]).
Under the pre-amendment law, the alleged negligent acts and omissions concerning the care of the decedent's pressure ulcer would have occurred in the course of providing "health care services," as they would have occurred in the course of providing services related to "the assessment or care of an individual with a confirmed . . . case of COVID-19" (id. § 3081[5][b] [eff Mar. 7, 2020, to Aug. 2, 2020]). However, under the post-amendment law, the defendants failed to conclusively demonstrate that, at a minimum, once the pressure ulcer developed, the alleged negligent acts and omissions relating to the treatment of that condition occurred in the course of providing treatment for COVID-19 or care to an individual with a confirmed case of COVID-19 "as it relates to COVID-19" (id. [eff Aug. 3, 2020]). The defendants' position that since the decedent was being treated for COVID-19, all the care that he received in the hospital, including for a pressure ulcer, was related [*3]to COVID-19 would not give any effect to the amendment. In contrast, the plaintiff's position would be consistent with the Legislature's objective to limit the broad immunity that had been provided essentially for all care rendered to patients "with" COVID-19 and make the immunity applicable only to care provided to COVID-19 patients "as it relates to COVID-19" (see generally CIT Bank N.A. v Schiffman, 36 NY3d 550, 559). Significantly, the defendants did not show that pressure ulcers are a complication of COVID-19 specifically, as opposed to an entirely unrelated condition that arises during the course of treatment for many different types of diseases and injuries.
Moreover, under the circumstances of this case, the defendants also failed to conclusively demonstrate that the treatment of the decedent's skin integrity and pressure ulcer was impacted by the hospital's "decisions or activities in response to or as a result of the COVID-19 outbreak and in support of the state's directives" (Public Health Law former § 3082[1][b]; seeGonnelly v Newburgh Operations, LLC, 236 AD3d 866, 868; Damon v Clove Lakes Healthcare & Rehabilitation Ctr., Inc., 228 AD3d 618, 619). The affirmation of the hospital's chief medical officer was detailed as to the particular treatment that the decedent received for COVID-19 but was general and conclusory as to the impact of the defendants' COVID-19 response on the particular care rendered to the decedent that is at issue here (cf. Hyman v Richmond Univ. Med. Ctr., 239 AD3d at 618).
Finally, the defendants' evidentiary submissions "failed to establish that there is no significant dispute as to whether the [decedent's] pressure ulcer[ ] arose from the use of a ventilator," such that the defendants failed to demonstrate their entitlement to dismissal of the complaint insofar as asserted against them pursuant to CPLR 3211(a)(7) on the basis of the PREP Act (Kluska v Montefiore St. Luke's Cornwall, 227 AD3d at 692).
Accordingly, we affirm the order.
IANNACCI, J.P., VOUTSINAS, TAYLOR and LOVE, JJ., concur.
ENTER:
Darrell M. Joseph
Clerk of the Court